**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


<u>SDC Solutions, Inc.</u>

    v.                                                    Civil No. 08-cv-89-JL

<u>Amcom Software, Inc.
and David Manley</u>


**<u>REPORT AND RECOMMENDATION</u>**

Plaintiff moves for a preliminary injunction (Document no. 3) seeking to enjoin defendants from utilizing SDC's confidential information as obtained through Defendant Manley and to cease and desist dealings with Centennial Medical Center and other entities where defendants received information about SDC's potential customers from SDC's confidential materials.  Defendants object.

<u>Standard</u>

To justify the extraordinary relief of a preliminary injunction, plaintiff bears the burden of establishing that an injunction is necessary to prevent irreparable harm and to preserve the status quo, to enable a meaningful disposition upon full adjudication of his claims.  See <u>Ross-Simons of Warwick, Inc. v. Baccarat, Inc.</u>, 102 F.3d 12, 18 (1st Cir. 1996) (finding

irreparable harm where legal remedies are inadequate); see also CMM Cable Rep. v. Ocean Coast Props., 48 F.3d 618, 620-1 (1st Cir. 1995) (enjoining certain conduct permits the court "more effectively to remedy discerned wrongs"); Acierno v. New Castle County, 40 F.3d 645, 653 (3rd Cir. 1994) (explaining irreparable harm and its effect the contours of preliminary injunctive relief).  To carry this burden, plaintiff must demonstrate: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Esso Standard Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); see also Ross-Simons of Warwick, Inc., 102 F.3d at 18-19 (explaining the burden of proof for a preliminary injunction).  If plaintiff is not able to show a likelihood of success on the merits, the remaining factors "become matters of idle curiosity," id., insufficient to carry the weight of this extraordinary relief on their own.  See Esso Standard Oil Co., 445 F.3d at 18 (the "sine qua non . . . is likelihood of success on the merits") (internal

quotation omitted).  While likelihood of success is the critical factor, a preliminary injunction will not issue even if the plaintiff is likely to succeed, unless plaintiff also demonstrates he will suffer irreparable harm without the requested injunctive relief.  See Ross-Simons of Warwick, Inc., 102 F.3d at 19 ("the predicted harm and the likelihood of success on the merits must be juxtapose and weighed in tandem").

Facts

Defendant Manley is, and long has been, a resident of Tennessee.  Amcom is a Delaware Corporation with a principal place of business in Minnesota.  Plaintiff is a New Hampshire corporation with a principal place of business here.

Manley was employed by a company called Dialogic which made emergency contact systems for hospitals and other similar entities.  The Dialogic system is the stand alone system requiring telephone switches and dial tones while plaintiff and defendants have a suite of products only some of which are emergency notification products.  While with Dialogic, Manley made a product presentation in February or March, 2007 to Centennial Medical Center.  Exhibit C.  He did not sell the system to Centennial.

In April of 2007, Manley accepted a sales position with plaintiff. He signed a "Confidentiality Statement," <u>Exhibit 1</u>, but did not sign a proffered "Non-Competition/Nondisclosure Agreement." <u>Exhibit B</u>. Plaintiff assigned Manley the sales territory of Tennessee, Arkansas, Georgia, Mississippi, Florida, Louisiana, South Carolina, and Alabama. He worked from his home in Tennessee.

In his short six-month career with SDC, Manley made no sales. He did admit that he made telephone calls to Centennial Medical Center, but testified that they were not returned prior to the time he left SDC.

While plaintiff alleges that Manley met on behalf of SDC with a Centennial employee named Rutledge, it could not at this stage of proceedings, prove that such a meeting took place. What SDC did prove, in a very effective cross-examination, was that Manley has a propensity for lying and has trouble keeping his lies straight.

Whatever the truth is about a meeting with Rutledge, it is clear that on September 17 Manley made a computer entry saying that he had had a meeting on the 14th with Rutledge and Glenda Baker and he claimed that "they" loved the SDC suite of products.

Exhibit 4.  Manley testified that the entry was a bogus one meant to make himself look to SDC management like he was "selling". Within minutes after that entry, he produced a thirteen-page proposal for "IntelliDESK® 3 Console & Paging."  Exhibit 6.  In fact, such proposals are generated from input on existing on-line "forms."  Again, Manley was not truthful about whether he prepared the proposal.  I find that he did prepare it.  There is no evidence at this point, however, that it was ever delivered to Centennial or that Centennial wanted or expected a proposal from SDC.

 The testimony about Manley's resignation letter, Exhibit 2, was bizarre.  The letter says he is resigning as of October 26, 2007, the date of the letter.  In fact, he started with Amcom on October 22nd.  The letter says he took a position in sales with "Active RF10" when he actually had taken a position with Amcom. The letter says that the position he was taking was a "Director of Healthcare selling . . ." but he testified he instead was referring to an equity position with "Track It."  In short, Manley lied in the letter and compounded that with lies in his testimony.  Manley's body language and suffused face, together with his inconsistent and evasive answers established that he

lied throughout his testimony.

The story offered by Manley about his contact with Centennial is also not credible.  Contrary to his testimony, I find that he did have contact with Centennial on SDC's behalf and that he did develop a proposal for Centennial.  There is no evidence that he delivered it however.  It is simply not credible that Rutledge would not return either of Manley's alleged SDC phone calls when it is clear that Manley easily reached Rutledge to arrange for the November 14th Amcom presentation and when Ms. Charest of SDC had no problem reaching Rutledge.  Manley claims to know Rutledge well, even though Rutledge told Charest he had no idea who Manley was.  Rutledge, who had just met with Manley on November 14th appears to have the same problem as Manley with truth.

Plaintiff also proved that Manley remained in possession of its computer and some materials for roughly one week after accepting the Amcom position on October 22nd.  However, there is no evidence at this point that he used the "SDC" proposal for Centennial or used SDC materials.  In fact, according to Manley, the Amcom proposal to Centennial was for the same type of products as his Dialogic proposal and was not similar to the

purported SDC proposal.  Discovery will establish whether or not that is true, but for preliminary injunction purposes, I accept Mr. Collins' testimony that Amcom's proposal was for "E notify" and "flash alert" products resembling the Dialogic proposal.

Mr. Collins testified that Amcom has made no sale to Centennial and that Manley had absolutely no involvement in a Maryland (Mercy Hospital) sale.  Plaintiff also failed to prove that Manley had any involvement in an Alabama proposal.

## Discussion

SDC states that it has shown that it had an economic relationship with Centennial, that defendants knew of the relationship, that defendants intentionally interfered with the relationship and that SDC was damaged by the interference.  This, SDC argues, demonstrates a likelihood of success on the merits.

The "confidentiality statement," Exhibit 1, is not a sound basis for a claim that SDC's potential customers were covered by it.  First, its principle clause is not a complete sentence, making it nonsense.  Second, every SDC potential customer is a potential customer of Amcom.  There is a directory of hospitals and none of them are secret.

With the possible exception of Centennial, no prospective customers were shown to be developed to the point of an "already existing relationship giving rise to a 'reasonable exception of economic advantage'." <u>Heritage Home Health, Inc. v. Capital Region Health Care Corp.</u>, 1996 WL 655793, *4 (D.N.H. 1996) (citation omitted).  Nor has SDC shown that Manley even knew of any such others.  At this time, and on the current state of the evidence, SDC has not shown any likelihood of success on the merits relating to any entity, customer or act aside from Centennial.

The right to an injunction then is limited to consideration of an injunction relating to Centennial.  The facts developed to date are not sufficient to establish a likelihood of success on the merits with respect to Centennial.  Manley lived in the Nashville area for twelve years prior to 2007 and was personally familiar with Centennial long before his SDC employment.  Manley also made a proposal to Centennial on behalf of Dialogic prior to his employment with SDC.  Amcom had contact with Centennial at least by 2003.  In short, Centennial as a potential customer was not unique to SDC.

SDC's position that Centennial was more than just a potential customer common to its competitors depends on whether SDC actually had a relationship and that the relationship had developed to the point of a reasonable expectation of economic advantage.  If so, plaintiff would be likely to success on both its tort claim and its trade secret claim.

The problem for SDC at this time is that it must rely on speculation and inference.  Given Manley's lies, SDC may yet prove that Manley did communicate a proposal to Centennial and that Centennial was very interested.  However, the only evidence to date is that Manley and Rutledge say no SDC proposal was ever made by Manley.  Since the proposal was created <u>after</u> the "memo to file" by Manley of Centennial's supposed great interest, there is a significant documentary fact supporting the Manley and Rutledge claim that no SDC relationship had been formed.

SDC must do some discovery before speculation can turn to facts sufficient to support injunctive relief.  Since the likelihood of success on the merits has not been shown, and it is the <u>sine qua non</u> of preliminary injunctive relief, I need not address irreparable harm.  I recommend that the motion (Document no. 3) be denied.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

/s/ James R. Muirhead
James R. Muirhead
United States Magistrate Judge

Date:   June 26, 2008

cc:     George T. Campbell, III, Esq.
        Martha Van Oot, Esq.
        Nicole Haaning, Esq.
        Roy A. Ginsburg, Esq.